**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**George R. REMER, Respondent.**

No. 02–0210.

Supreme Court of Iowa.

June 12, 2002.

See also 616 N.W.2d 553.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

George R. Remer, Battle Creek, pro se.

STREIT, Justice.

An Iowa attorney admittedly engaged in a long course of self-dealing but claims he violated no rules of professional responsibility because he did not harm anyone. The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with our Grievance Commission against respondent, George Remer, alleging he violated several ethical rules and recommended we suspend Remer's license to practice law for three years. Our review is required by Iowa Court Rule 35.10 (2002). We agree with the Commission's findings of misconduct and its recommended sanction.

## I. Background and Facts

This case comes before us on its return from a remand to the Grievance Commission. The Iowa Supreme Court Board of Professional Ethics and Conduct initiated attorney disciplinary proceedings against George Remer based on Remer's unprofessional conduct while acting as guardian and conservator of his aunt, Bessie Jordan.

Jordan's primary asset was a 423–acre family farm. Jordan and her sister, Lucille Remer (mother of George Remer), operated the farm as a farm partnership. Beginning in 1974, Remer ostensibly acted as the farm manager. Remer was appointed to act as conservator of Jordan's estate from September 16, 1985, to Jordan's death on October 9, 1992. No guardian ad litem was appointed for Jordan. In September 1987, Lucille died with the resulting property disposition leaving Jordan 68.75% outright ownership of the farm and a life interest in another 10.42%.

In March 1987, Remer formed Garden Farm Inc. in which Remer's wife was the sole shareholder. Remer, acting as farm manager, leased Jordan's interest and the other fractional interests in the family farm to GFI as tenant. Remer did not seek court approval for this transaction. During the same year, Remer, as conservator, arranged for Jordan to lease two new grain bins for the farm with an option to buy. At the request of the grain bins seller, Remer obtained court approval for this transaction.

In August 1988, Remer obtained court approval for the sale of Jordan's fee simple interest in the farm to GFI. Remer claimed the sale of the farm was in Jordan's best interest because she did not have sufficient funds to meet her present needs. Remer obtained two appraisals of the farm property. One appraisal valued the farm at $525 per acre and the other

appraisal value was $575 per acre. Signed bank statements from 1986 and 1987 showed the farm was worth $700 per acre. Remer proposed to sell Jordan's interest in the farm for $575 per acre. Remer did not attempt to find a buyer other than GFI and he did not inform Jordan or other family members of his intention to sell and purchase Jordan's interest in the farm. Four months after the appraisals were made, two orders approving the sale were entered without notice to Jordan or anyone acting on her behalf other than Remer, as the conservator/applicant.

Jordan died on October 9, 1992. Remer's wife was appointed administrator of the Jordan estate and Remer as attorney for the estate. In May 1994, Gail Griffith Lovell, the current administrator of Jordan's estate, filed a petition for the removal of Remer's wife as administrator. In response, both Remer and his wife resigned from their respective positions. Lovell was then appointed to serve as Jordan's administrator. Lovell filed an action to set aside the sale of Jordan's interest in the farm to GFI asserting the sale was not in Jordan's best interests and was the result of Remer's self-dealing.

The district court did not set aside the sale, finding the price GFI paid for Jordan's interest in the farm was fair and the sale was in Jordan's best interests. The district court also concluded Remer did not breach a fiduciary duty in failing to liquidate a walnut grove on the farm prior to its sale to GFI. However, the court concluded Remer (1) improperly imposed the grain bin expense on Jordan; (2) improperly obtained farm management fees for services that did not benefit Jordan; (3) improperly transferred $6000 of Jordan's money to her sister Lucille's estate when no money was owed to Lucille; (4) improperly charged Jordan for accounting services necessary to remedy Remer's poor bookkeeping practices; (5) failed to pay Jordan her share of rental income attributable to her life estate interest; (6) improperly charged Jordan's life tenancy interest for improvements made after the sale of her fee simple interest; and (7) improperly charged Jordan for penalties incurred as a result of Remer's failure to pay her real estate taxes on time. *In the Matter of Guardianship & Conservatorship of Jordan v. Remer*, 616 N.W.2d 553, 557–58 (Iowa 2000).

On appeal, we concluded the sale of Jordan's interest in the farm to GFI was not in her best interests and should not have been approved by the district court. *Id.* at 561. We remanded for a determination of whether the improvements were beneficial to Jordan because, if they were beneficial, the judgment against Remer would need to be altered. *Id.* at 559–60. As to all of the other findings of the district court, we affirmed.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against Remer alleging his conduct as Jordan's conservator and guardian violated the rules of professional responsibility. The Grievance Commission conducted a hearing to determine whether Remer violated the rules of professional conduct. At a hearing on the matter, the Commission admitted into evidence two district court rulings in the civil case. The Commission's findings came before us on de novo review and we vacated the Commission's report because the Board relied only on the district court ruling as a factual basis for its findings that Remer was guilty of misconduct. The Board asserted the trial court's findings should be accorded res judicata effect. Finding the doctrine of issue preclusion should not have been used, we remanded for a new hearing. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Remer*, 617 N.W.2d 269,

272 (Iowa 2000). We now have before us the findings and recommendations of the Commission made as a result of the new hearing.

## II. Scope of Review

■ We review the findings and recommendations of the Grievance Commission de novo. Iowa Ct. R. 35.10. We give respectful consideration to the Commission's findings and recommendations, but are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 13 (Iowa 2000). The Grievance Commission has the burden to prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 619 N.W.2d 407, 409 (Iowa 2000).

## III. The Commission's Findings

The Commission found Remer violated several rules of professional conduct in his dealings as Jordan's guardian and conservator. *See* DR 1–102(A)(1). First, the Commission concluded Remer engaged in conduct that is prejudicial to the administration of justice and engaged in conduct that adversely reflects on Remer's fitness to practice law. *See* DR 1–102(A)(5), (A)(6). Additionally, the Commission found Remer violated the rule providing, "a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property or personal interests." DR 5–101(A). Finally, the Commission concluded Remer violated the rule prohibiting a lawyer from "enter[ing] into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure." DR 5–104(A).

## IV. Misconduct

■ At the hearing before the Commission Remer admitted his self-dealing numerous times. The Commission asked Remer whether he had a financial interest in the farm and he replied "well most certainly, I had a financial interest in everything that happened on the farm. There isn't any question about that. The question is, did it harm her?" Later, again after admitting self-dealing, Remer stated "the issue really should be the harm that happened." Remer repeatedly claimed he caused no harm to Jordan. The Commission also found Remer failed to fully cooperate with the Ethics Board's inquires in the matter. Overall, the Commission was concerned with Remer's lack of remorse, failure to take responsibility for his misconduct, and general attitude in this matter. As a sanction, the Commission recommended a three-year suspension of Remer's license to practice law.

Self-dealing itself is not prohibited. However, self-dealing by fiduciaries will be permitted only where it has been approved by the court and there is an adequate reason for the transaction. *See* Iowa Code § 633.155 (2001). The granting of court approval is conditioned on giving notice and an opportunity to be heard to all interested persons. *Id.* In the conservatorship/guardianship situation, the notice requirement includes giving notice to the ward. We conclude Remer violated the rules of professional responsibility and Iowa Code section 633.155 by failing to give notice to Jordan.

Remer's only defense for his self-dealing is that it did not harm Jordan. However, his assertion is not supported by the evidence. Rather, the evidence overwhelmingly proves a number of Remer's transac-

tions were not in Jordan's best interests. We begin with the sale of the family farm. As a result of the sale and the way it was structured, Jordan was entitled to less money in sale proceeds than rental income. The contract of sale released GFI from making rental payments for Jordan's fee simple interest on December 1, 1988 or thereafter. Jordan was still entitled to rentals on her life tenancy interest. However, GFI, or Remer, never paid the annual rent amount of $2704. In sum, as a result of the sale, GFI was required to pay Jordan $2704 in rentals on December 1, 1988 and $17,666 in principal and interest payments on January 1, 1989. Had there been no sale, GFI would have been required to pay Jordan $20,584 in rentals on January 1, 1989. The contract provided an amortized interest and principal payment of only $16,167 annually.

Remer attempted to justify the sale based on Jordan's allegedly unstable financial condition prior to the sale of the farm. He asserted the sale was necessary to allow Jordan to pay for her ordinary expenses. However, if the sale changed Jordan's financial situation, it did so only minimally. After the sale, Jordan was entitled to $16,167 annually rather than farm rent of over $20,000, and ownership of a 68.75% fee simple interest. The sale still left her without the ability to take care of her present expenses and left no room for any future, unanticipated expenses.

In addition to the sale of the farm, Remer's actions on several other occasions did not benefit Jordan. Remer made one significant farm expenditure allegedly in her best interests. He rented/bought two new grain bins claiming Jordan needed them to store more grain. However, the evidence is clear that Jordan's grain was already adequately stored and she was not in need of additional storage. Moreover, the cash lease on the farm did not require the farm owners to make any capital improvements. Remer also took $6000 out of the conservatorship and gave it to his mother, Lucille. There is no evidence to indicate Jordan owed Lucille this money. In fact, Remer admitted the number was merely an estimate, he could not remember how it was calculated, and he could not show how the amount was justified. As a result of Remer's poor bookkeeping skills, he was forced to hire an accounting firm to sort out the mess he created. Remer, as farm manager, charged Jordan's conservatorship for the accounting fees. Remer also failed to pay Jordan's real estate taxes on time for the years 1986 through 1988. He used Jordan's funds to pay the penalties incurred as a result of his late filing. In short, the record amply supports the conclusion that Remer's self-dealing harmed Jordan economically.

■ Even if we found Jordan was not harmed by Remer's self-dealing, it would not change the outcome here. Violation of the rules of professional conduct prohibiting a lawyer from entering into a business transaction with a client if they have differing interests may be established without showing the client suffered economic or other disadvantage from the misconduct. *See Comm. on Prof'l Ethics & Conduct v. Postma,* 430 N.W.2d 387, 392 (Iowa 1988) (citing *Comm. on Prof'l Ethics & Conduct v. Baker,* 269 N.W.2d 463, 466 (Iowa 1978)). *See generally Comm. on Prof'l Ethics & Conduct v. Oehler,* 350 N.W.2d 195, 198–99 (Iowa 1984); *Matter of Randall,* 640 F.2d 898, 905 (8th Cir.1981). However, the violation is aggravated when economic disadvantage is shown. *Baker,* 269 N.W.2d at 466.

We now must determine the appropriate sanction for Remer's ethical violations. We consider a lawyer's prior attorney disciplinary history as an aggravating circumstance. In 1987, Remer was publicly rep-

rimanded for failing to timely file Iowa and federal income tax returns for three separate years. *See* DR 1–102(A)(1), (3), and (6) (a lawyer shall not: violate a disciplinary rule; engage in illegal conduct involving moral turpitude; and engage in any other conduct that adversely reflects on the fitness to practice law); EC 1–5; EC 9–6. He is currently under suspension for failure to comply with continuing legal education and client security requirements. We also take into consideration the fact Remer did not respond to interrogatories in this case. As a result, Remer was prohibited from calling any witnesses at the hearing before the Commission, other than himself.

We also consider the presence of any mitigating factors in determining the appropriate sanction. The evidence admitted into the record indicates Remer suffered a stroke on August 15, 1995. Remer testified the stroke has affected his ability to remember certain things and overall has compromised his ability to practice law. Remer admitted his doctor believes Remer is no longer competent to practice law. His doctor went so far as to recommend that Remer discontinue his practice. Remer asserts his compromised memory is the reason he did not respond to the Board's requests for interrogatories. Though we are highly concerned about Remer's physical and mental abilities to continue the practice of law, the stroke itself does not excuse any of Remer's misconduct.

Remer's egregious pattern of self-dealing was motivated purely by his desire for personal gain. In seeking his own financial advantage, Remer failed to seek court approval for most of the transactions he completed with the conservatorship. Furthermore, he did not fully disclose to Jordan the competing interests between Remer's own personal financial stake in the farm and his fiduciary duties as Jordan's conservator. His conduct reflects self-dealing, dishonesty, total willingness to compromise the interests of his client, and absolutely no remorse. *See In re Irby*, 735 So.2d 624, 626 (La.1999). Remer's failure to acknowledge any misconduct reflects upon his inability to conform his conduct to our rules of professional responsibility for lawyers. Moreover, his misconduct has made wholly vulnerable the relationship between a lawyer and the client. Such misconduct warrants a suspension to serve as a penalty to Remer and as a deterrent to others. A suspension will also serve to maintain the public's confidence that we will maintain the ethics of this profession. *See State v. Johnson*, 149 Iowa 462, 468, 128 N.W. 837, 839 (1910) ("The relation between an attorney and his client must necessarily be one of great confidence, and an attorney who knowingly abuses the trust and confidence placed in him by his client is unfit for the profession and unworthy of a place therein.").

We therefore suspend Remer's license with no possibility for reinstatement for a period of three years from the date of the filing of this opinion. Upon application for reinstatement, Remer shall have the burden to prove he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.13. Remer also must certify both his medical and physical conditions are adequate to practice law. Any hearing on application for reinstatement shall be at least sixty days after the filing of such application. *See* Iowa Ct. R. 35.13(1)(a). The costs of this action are assessed against the respondent in accordance with Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**