# IN THE SUPREME COURT OF IOWA

No. 09–0504

Filed June 26, 2009

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES L. WAGNER,**

Respondent.

___

On review of the report of the Grievance Commission.

Grievance Commission in disciplinary proceeding recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

James L. Wagner, Waterloo, pro se.

**PER CURIAM.**

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, James L. Wagner, violated ethical rules by neglecting client matters, prematurely taking probate fees, misrepresenting the status of an estate to the court, failing to deposit unearned fees in his trust account, failing to promptly return unearned fees, and failing to cooperate with the Board. A division of the Grievance Commission of the Supreme Court of Iowa found Wagner violated the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct and recommended that we suspend Wagner's license to practice law for a period of ninety days.[1] Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the Commission, we find the respondent committed the alleged ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for six months.

### I. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007). The Board has the burden to prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

> This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we "may

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. Some of the conduct in this case occurred before the effective date of the new rules and some after.

impose a lesser or greater sanction than the discipline recommended by the grievance commission."

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). The Commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008).

## II. Factual Findings.

The respondent has been an attorney for thirty-five years and is currently practicing law in Waterloo, Iowa. The charges in this disciplinary action stem from the respondent's representation of four separate clients. A hearing was held before a division of the Grievance Commission on February 24, 2009. The factual findings and conclusions reached in each case will be addressed separately.

**A. Bornong Estate.** In January 2004, Wagner was retained to assist in the probate of the estate of Margaret Bornong. The executor of the estate was the decedent's sister, Helen McClain.

Shortly after opening the estate, Wagner obtained a fee authorization order in the amount of $22,642. Although he had not prepared or filed the appropriate tax returns, on March 3, 2004, Wagner took $11,321 or one-half of the authorized fee. He took the second half of his fees on October 1, 2005, before any final report was prepared or filed or the court costs paid. The respondent did not place these moneys in the client's trust account.

Pursuant to Bornong's will, the residuary of her estate was to be placed in trust with the income to be distributed to her nephew, Michael McClain, while he completed his Ph.D., but for no longer than two years after Bornong's death. Thereafter, the principal and accumulated income

was to be distributed equally to her sister's children. Two years after her death, the decedent's estate remained open. On October 31, 2005, Wagner filed an interim report informing the court that the final report and accounting was being prepared and that all assets had been distributed. He requested that the court allow the estate to be held open until February 28, 2006, "to allow one of the beneficiaries to finish school to avoid the expense of opening and administering a Trust."

The executor, Helen McClain, died on March 2, 2006. On May 4, 2006, Michael McClain wrote to the respondent requesting the respondent's assistance in locating his mother's will and voicing concerns that his aunt's estate had not been settled and that the tax obligations had not been addressed. Wagner failed to respond to this inquiry. On May 31, 2006, the respondent had filed another interim report and request to keep Bornong's estate open. This request was signed by the respondent without the named alternate executor's knowledge or consent.

The new executor obtained new legal representation. Upon investigation, it was discovered the respondent had failed to file some of the required federal and state estate tax returns. Moreover, the returns that had been prepared and/or filed were incorrect, resulting in significant penalties and interest. It was also determined Wagner had failed to appropriately file the required fiduciary tax forms, resulting in additional penalties and fees. Together, these errors resulted in penalties and interest in excess of $55,000. In addition, counsel determined Wagner had misrepresented to the court the status of beneficiary Michael McClain, who had completed his education five months prior to the respondent's initial request to hold the estate open and, further, had

misrepresented in the second interim report that he—Wagner—was awaiting tax clearances. The tax returns, in fact, had not been filed.

As a result of the respondent's dilatory handling, the estate was not closed until June 2007, over three and one-half years after Bornong's death. Moreover, despite requests from the estate, Wagner failed to refund any portion of his fees or recompense the estate for his errors. On May 29, 2007, the executor of the estate filed a lawsuit against Wagner, seeking damages due to Wagner's negligence in administering Bornong's estate. On January 10, 2008, Wagner confessed judgment to the executor in the sum of $66,058. On February 5, 2009, the respondent paid the judgment plus interest and costs.

The Board asserted Wagner violated our ethical rules by (1) failing to handle the estate with reasonable diligence and promptness; (2) failing to adequately communicate with his client; (3) collecting probate fees before they were earned, contrary to Iowa Rule of Probate Procedure 7.2(4);[2] (4) failing to deposit unearned fees into his trust account; (5) misrepresenting the status of a matter to the court; and (6) failing to promptly refund unearned fees. *See* Iowa Rs. Prof'l Conduct 32:1.1 (requiring lawyer to provide competent representation); 32:1.3 (requiring lawyer to act with reasonable diligence and promptness in representing a client); 32:1.4 (requiring lawyer to keep client reasonably informed and promptly comply with requests for information); 32:1.5(a) (providing lawyer shall not violate any restrictions imposed by law relating to a fee); 32:1.15 (requiring lawyer to place unearned fees in client trust account);

---

[2]In pertinent part, Iowa Rule of Probate Procedure 7.2(4) provides:

One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared. . . . The remainder of the fees may be paid when the final report is filed and the costs have been paid.

32:1.16(d) (requiring lawyer, upon termination, to promptly refund any unearned fee); 32:3.3(a)(1) (prohibiting lawyer from knowingly making false statement of material fact to the court); and 32:8.4(a), (c), and (d) (holding it is misconduct for lawyer to violate an ethical rule, engage in conduct involving misrepresentation, and engage in conduct that is prejudicial to the administration of justice); Iowa Ct. Rs. 45.1 (requiring attorney to deposit funds belonging to client in client trust account); 45.2(2) (requiring attorney to promptly deliver to the client funds that client is entitled to receive).

In response, the respondent admitted the factual allegations contained in this count of the Board's complaint. He also admitted the alleged violations. Upon our de novo review of the record, we, like the Commission, conclude the facts support a finding by a convincing preponderance of the evidence the respondent committed the ethical violations alleged by the Board in his representation of the Bornong estate.

**B. Ronald Bearbower Asbestos Claim.** Between 1963 and 1966, Ronald Bearbower was a seaman in the Navy where he was exposed to asbestos on a regular basis. In 1997, Bearbower was diagnosed with lung cancer for which he underwent treatment. Although currently in remission, he lives each day with the risk of his cancer returning.

In 2003, Bearbower learned of a Texas law firm that was prosecuting asbestos cases resulting from exposure during military service. Upon his request for information, Bearbower received a questionnaire and an attorney employment agreement form from the Texas firm. In May 2003, Bearbower brought the information to Wagner for his review. A week later, Wagner agreed to represent Bearbower in his asbestos claim, and the parties entered into a written contract.

On July 11, 2003, the Texas law firm contacted Bearbower in writing, inquiring whether he intended to proceed with his asbestos claim. The letter indicated a need to act expediently because more stringent filing criteria were expected after August 1. Bearbower presented Wagner with this information. Wagner, however, advised him not to worry because under Iowa law the statute of limitations would not run for two years.

From August 2003 to August 2004, Bearbower called the respondent's office every other month to see how things were progressing. The respondent never returned Bearbower's calls. Between January 2005 and December 2006, Bearbower called Wagner approximately twice a week to inquire as to whether a lawsuit had been filed. Wagner never returned any of these calls either. Finally, in December 2006, Bearbower obtained a new attorney. An investigation revealed that Wagner had failed to file any lawsuit on Bearbower's behalf. Moreover, subsequent inquires led to the conclusion the statute of limitations had run on Bearbower's asbestos claim.

The Board alleged the respondent's actions in the Bearbower asbestos claim evidenced neglect and a failure to communicate and led to the loss of the client's claim. As a result, the Board claimed the respondent violated the Iowa Code of Professional Responsibility for Lawyers DR 6–101(A), providing a lawyer shall not neglect a client's legal matter; DR 7–101(A), providing a lawyer shall not fail to carry out a contract of employment legally entered into or prejudice or damage a client during the course of the professional relationship; DR 1–102(A)(1), (5), and (6), holding it is misconduct for a lawyer to violate an ethical rule, engage in conduct involving misrepresentation, and engage in conduct that is prejudicial to the administration of justice; and Iowa

Rules of Professional Conduct 32:1.1, 32:1.3, 32:1.4, and 32:8.4(a) and (d).

The respondent admitted the facts asserted in the Board's complaint. He also admitted the alleged violations. As in the prior claim, we conclude the facts support a finding by a convincing preponderance of the evidence the respondent committed the ethical violations alleged by the Board in his representation of Ronald Bearbower.

**C. Dorothy Bearbower Personal Injury Claim.** Dorothy Bearbower was injured in a motor vehicle accident on January 10, 2003. She subsequently engaged the respondent to represent her in a claim against the driver of the other vehicle, Sally Jarchow. On January 10, 2005, the respondent filed a claim on behalf of Dorothy and Ronald Bearbower against the Jarchows.

In April 2005, the respondent was served with interrogatories and a request for production in the matter. The Bearbowers were never informed of these discovery requests or contacted by the respondent with regards to them. When discovery was not forthcoming, the defendants' attorney filed a motion to compel and a motion for sanctions. On October 5, 2005, Wagner responded that discovery would be completed by October 31, 2005. The deadline was subsequently extended until January 16, 2006. The respondent failed, however, to ever respond to the defendants' discovery request. On March 7, 2006, the court granted the defendants' motion to dismiss due to Wagner's failure to resist the renewed motion for sanctions and his failure to respond to discovery. By this time, the two-year statute of limitations had run on Dorothy Bearbower's claim, preventing the refiling of the action. The Bearbowers subsequently filed a lawsuit against the respondent for negligent representation in this matter and in the asbestos case.

The Board alleged the respondent's actions violated DR 6–101(A), DR 7–101(A), and DR 1–102(A)(1), (5), and (6) of the Iowa Code of Professional Responsibility for Lawyers and Iowa Rules of Professional Conduct 32:1.1, 32:1.3, 32:1.4, 32:3.2 (requiring lawyer to make reasonable efforts to expedite client's litigation), and 32:8.4(a) and (d). Again, the respondent admitted the facts alleged in the Board's complaint, which we conclude establishes by a convincing preponderance of the evidence the ethical violations alleged by the Board.

**D. Nelsen Real Estate Transaction.** In early 2008, four siblings, Steve Peterson, Ronny Fike, Joyce Davis, and Irv Peterson, through their real estate agent, Amy Wienands, entered into an agreement with Mitchell Nelsen to sell Nelsen their parents' house. Wagner was retained by the sellers to assist in this transaction. The sellers subsequently filed a complaint with the Board, asserting Wagner had failed to diligently and promptly represent them in the transaction. Upon the Board's inquiry, Wagner denied the allegation stating "[he] felt that [he] timely handled the . . . matter based on the file and results."

The Board called two witnesses to testify at the hearing. Realtor Wienands testified the sellers entered into a purchase agreement with Nelsen on January 10, 2008. On February 27, 2008, the day before the scheduled closing, Wienands received the title opinion from the title company. The opinion raised several concerns with the title. Wienands testified none of the issues were extraordinary, and she believed the sellers' attorney, Wagner, should have been able to resolve the issues within a week.[3] The parties, however, agreed to continue the closing for

---

[3]The issues to be resolved involved clearing up back child support owed by one of the sellers and establishing that one of the sellers had been erroneously identified as a debtor due to a name similarity.

two weeks in order to give Wagner ample time to effect a resolution. A new closing date was set for March 11, 2008.

Thereafter, Wienands testified she encountered a great deal of difficulty in contacting the respondent to ascertain the status of the title issues. Numerous and frequent calls to Wagner went unanswered. When contact was made, Wagner's response about the status of the title opinion was that it was "almost done" or was "ready to go out" and then nothing would happen. During this period of time, Wienands was fielding inquiries from both the buyer and the sellers. She relayed these inquiries to Wagner, who failed to respond. Moreover, Wienands testified that Wagner never requested additional time or communicated to her that he was having difficulty resolving the concerns with the title.

Ultimately, the title issues were resolved, and the real estate transaction was closed on April 24, 2008, eight weeks after it was originally scheduled to close and six weeks after the extension. During this time, the buyer was assessed a rate lock extension fee. According to Wienands, a rate lock allows a buyer to "lock in" an interest rate for a period of time. Extensions on a rate lock can generally be obtained at a cost of between $300 and $600. In this case, Wienands testified the mortgage company agreed to pay the rate lock extension fee for the buyer.

Seller Steve Peterson was also called by the Board to testify. His recollection of events corresponded with Wienands'. Peterson testified numerous phone calls made by him and his siblings to Wagner went unanswered. In addition, Peterson testified that one of the title issues involved his back child support. Peterson testified that he resolved this issue on March 3, 2008, and faxed the information to Wagner's office on that date. Peterson also informed the Board that, although the real

estate transaction was completed on April 24, 2008, there was no accounting until July 8, 2008.

At the hearing, Wagner did not cross-examine either of the Board's witnesses, and he did not put on any evidence of his own. Furthermore, he declined to make any statement to the Commission and submitted no brief. In other words, he provided no explanation to the Commission for his actions. Prior to the hearing, Wagner admitted he did not respond in a timely manner to the Board's letter of inquiry regarding his handling of this matter.

Based upon the evidence presented, the Commission concluded Wagner failed to handle this real estate matter in a timely manner and failed to sufficiently communicate with his clients. In addition, the Commission agreed with the Board that these actions violated the Iowa Rules of Professional Conduct, specifically rules 32:1.1, 32:1.3, 32:1.4, 32:8.1(b) (lawyer in a disciplinary proceeding shall not fail to respond to inquiry from the board), and 32:8.4(a).[4]

Upon our de novo review, we agree the evidence supports a finding by a convincing preponderance of the evidence that the respondent violated rule 32:1.3, requiring a lawyer to act with reasonable diligence and promptness when representing a client; rule 32:1.4, requiring a lawyer to keep his client reasonably informed and to promptly comply with requests for information; rule 32:8.1(b), requiring a lawyer to promptly respond to inquiries from the Board; and rule 32:8.4(a), providing it is misconduct for a lawyer to violate an ethical rule.

---

[4]The Commission also found Wagner's failure to respond to the Board's inquiry violated rule 32:8.4(d), prohibiting conduct prejudicial to the administration of justice. The Board's complaint does not, however, make this allegation under Count IV.

We disagree, however, that the Board satisfactorily established Wagner failed to provide competent representation in this case. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1. Although Wagner's handling of the title issues was dilatory, there was no evidence to support a finding that Wagner did not possess the necessary legal knowledge and skill to complete the task at hand. Moreover, from all reports, the representation, though slow, was appropriate. The Board presented no evidence to support a finding of a violation of rule 32:1.1.

The Board also alleged in its complaint that Wagner's handling of the real estate transaction matter involved misrepresentation. *See* Iowa R. Prof'l Conduct 32:8.4(c). The Commission did not address this allegation. Upon our de novo review, we conclude the evidence established by a convincing preponderance of the evidence that Wagner engaged in conduct involving misrepresentation. Wienands testified that, on several occasions, Wagner advised her that the title opinion documents were prepared and would be delivered that afternoon or the following morning. They never were. Repeated claims that the documents were ready and would be delivered shortly, followed by a failure to deliver said documents, supports the conclusion the documents were, in fact, not ready and that Wagner was misrepresenting this fact to the agent to the detriment of his clients.

### III. Sanctions.

The Commission recommends Wagner's license to practice law be suspended with no possibility of reinstatement for a period of ninety days. We may, however, impose a lesser or greater sanction than that

recommended by the Grievance Commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 629 (Iowa 2009).

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007). In determining the appropriate sanction for attorney misconduct,

> we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003).

The respondent's ethical violations involved neglect of several clients' matters. One consideration in determining the appropriate discipline is the harm resulting from the attorney's neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009).

It is undisputed the respondent's neglect caused great harm to his clients. Wagner's neglect of the Bornong estate resulted in the assessment of significant tax penalties and fees. Moreover, his inactions made it necessary for the estate to retain new counsel to close the estate and to bring legal action against the respondent to recoup those penalties and unearned attorney fees. Wagner's neglect of Ronald Bearbower's asbestos claim resulted in loss of the claim on statute-of-limitations grounds, while his neglect of Dorothy Bearbower's personal

injury claim resulted in the claim's dismissal. By the time the action was dismissed, the statute of limitations had run, effectively foreclosing her claim as well. While it does not appear Wagner's neglect of the Nelsen real estate matter resulted in monetary loss to his clients, the sellers, it did result in a rate lock extension cost to the buyer. Additionally, all of Wagner's clients were harmed by stress caused by Wagner's neglect.

When attorney misconduct involves neglect, sanctions have ranged from a public reprimand to a six-month suspension. *Casey*, 761 N.W.2d at 61. "When neglect is compounded by other misconduct, a more severe sanction may be required." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 670 (Iowa 2007). "Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006).

In this case, the Board established the respondent committed several additional ethical violations. Wagner's premature taking of probate fees and his failure to appropriately deposit the unearned fees into the client trust account constitutes a serious ethical infraction. *Casey*, 761 N.W.2d at 62. In the past, we have held that a deliberate conversion of client funds will warrant revocation of an attorney's license. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 704 (Iowa 2008). However, where an attorney has a colorable future claim to the funds, we have imposed a lesser sanction. *Casey*, 761 N.W.2d at 62. At the time Wagner took the fees, he had a colorable future claim to them upon closure of the estate. Nevertheless, while revocation may not be required, we find Wagner's failure to return, upon request, the unearned fees adds to the seriousness of his initial action of

prematurely appropriating his fee. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland,* 577 N.W.2d 50, 56 (Iowa 1998) (noting the failure to return unearned advance fees constitutes a major disciplinary problem).

Wagner's misrepresentations to the court and to his clients also weigh in favor of a more serious sanction. "Misrepresentation to the court constitutes a serious breach of professional ethics, warranting a more severe sanction than neglect." *Gottschalk,* 729 N.W.2d at 821. "At its most basic level a court must rely, not alone on the honesty of lawyers, but also on the reliability of factual representations submitted to the court." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ackerman,* 611 N.W.2d 473, 474 (Iowa 2000).

Wagner did not fully cooperate with the Board's investigation in the Nelsen matter. "We expect and demand attorneys to cooperate with disciplinary investigations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh,* 728 N.W.2d 375, 381 (Iowa 2007). Thus, the respondent's failure to cooperate is another act of misconduct requiring our consideration in crafting the appropriate discipline. *See Casey,* 761 N.W.2d at 60.

In addition to the established ethical violations, we consider whether any aggravating circumstances exist. Prior discipline is an aggravating factor to be considered. *Id.* at 62. Our records reveal the respondent was publicly reprimanded twice in 1999—once for neglect and once for misrepresentation. We also consider any mitigating factors. Here, Wagner failed to provide the Commission with any reasons in mitigation for his behavior. We, like the Commission, conclude that because no mitigating circumstances by way of explanation or excuse have been provided, there is nothing for us to consider.

In fashioning the appropriate sanction, "we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts." *Id.* We also consider the goals of discipline: deterrence, protection of the public, maintenance of the reputation of the Bar, and the actor's fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 738 N.W.2d 617, 621 (Iowa 2007). Considering the respondent's ethical violations and his prior disciplinary actions, we believe a more severe sanction than that recommended by the Commission is warranted. Wagner's neglect of his clients resulted in significant harm to them. In addition, his other ethical violations were serious and not inconsequential to his clients, the court, or the public. We find a six-month suspension is warranted. *Cf. id.* at 619–21 (neglect of and misrepresentations in six estates and premature taking of probate fees in three estates warranted six-month suspension).

## IV. Conclusion.

Based upon Wagner's neglect of his clients' cases, his misrepresentations to the court and others, his premature taking of probate fees and failure to deposit them in his client trust account, his failure to promptly return unearned fees, his failure to promptly respond to the Board, and his prior disciplinary record, we believe Wagner's license to practice law should be suspended for a minimum of six months. Accordingly, his license is suspended indefinitely with no possibility of reinstatement for six months. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3). The respondent shall provide all notifications required by Iowa Court Rule 35.22. Upon any application for reinstatement, Wagner shall have the burden to show he has not practiced law during the period of suspension and that he

meets the requirement of Iowa Court Rule 35.13.  Costs are taxed to Wagner pursuant to Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED.**

**This opinion shall be published.**