# IN THE SUPREME COURT OF IOWA

No. 12–0228

Filed May 18, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**KAREN A. TAYLOR,**

      Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical misconduct and recommends a public reprimand. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and N. Tré Critelli, Des Moines, for complainant.

Karen A. Taylor, Des Moines, pro se.

**APPEL, Justice.**

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa (commission). *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board (Board) alleges the respondent, attorney Karen Taylor, engaged in multiple instances of misconduct in violation of several rules of professional conduct. The commission recommends a public reprimand. Upon our de novo review, we agree with the recommendation of the commission.

## I. Procedural and Factual Background.

**A. Introduction.** In September 2011, the Board filed a complaint against Taylor. The Board alleges that Taylor violated several rules of professional conduct in her representation of Sharilyn Norin and Derrick Coleman in appeals of family law matters.[1]

In Count I, the Board alleges Taylor represented Norin in a child in need of assistance (CINA) proceeding. In that proceeding, Norin sought to challenge the placement of Norin's nephew outside the family. The Board alleges that Taylor failed to file a timely appeal to an adverse ruling, causing dismissal of the appeal. The Board further asserts that Taylor failed to advise her client of the dismissal in a timely fashion and misled the client regarding the reason for the dismissal. The Board alleges that Taylor's conduct violated rule 32:1.3 (neglect), rule 32:1.4(a)(3) (failing to keep a client reasonably informed about the status of a matter), rule 32:1.4(a)(4) (failing to promptly comply with reasonable requests for information), rule 32:8.4(c) (engaging in conduct involving misrepresentation), and rule 32:8.4(d) (engaging in conduct prejudicial to the administration of justice).

---

[1]The Board voluntarily dismissed a third count against Taylor involving another client.

In Count II, the Board alleges that Taylor represented Coleman in a modification proceeding where Coleman sought to alter a child custody arrangement. The Board alleges that Taylor failed to properly prosecute the appeal after an adverse ruling, causing dismissal of the appeal. The Board further asserts that Taylor failed to inform the client of the true basis of the dismissal. Based on these allegations, the Board asserts that Taylor violated rule 32:1.3, rule 32:8.4(c), and rule 32:8.4(d).

The commission held a brief hearing. The Board offered into evidence exhibits and called Taylor to testify. The facts were largely undisputed. Following the hearing, the commission concluded that Taylor had violated rules of professional conduct during her representation of Norin and Coleman and recommended that Taylor receive a public reprimand.

**B. Facts Established at the Hearing.**

1. *Norin matter.* Norin retained Taylor in August 2008 for the purpose of filing a motion to intervene in a CINA matter. Norin sought to contest the placement of her nephew with a nonfamily member. The district court denied Norin's request for a change of placement on November 10. Because the matter related to CINA issues, Taylor had fifteen days after the entry of the ruling to file a notice of appeal. *See* Iowa R. App. P. 6.101.

Taylor filed a notice of appeal on December 10, thirty days after the entry of the ruling. Taylor stated the belated filing was due to her mistaken belief that she had thirty days to file the notice of appeal. Taylor stated that she was aware that the fifteen-day deadline applied to appeals involving the termination of parental rights. Taylor explained, however, that she did not realize matters involving child placement were

also subject to the fifteen-day deadline, instead of the thirty-day deadline.

On December 24, the guardian ad litem of Norin's nephew filed a motion to dismiss based upon Taylor's failure to file a timely notice of appeal. Taylor did not resist the motion, and on January 29, 2009, this court dismissed the appeal.

The Board further asserts that Taylor engaged in neglect by not seeking an extension of time to file her brief under Iowa Rule of Appellate Procedure 6.101(5), which allows a motion for an extension of time to be filed within sixty days of the original deadline when the clerk of the district court has failed to notify a prospective appellant of the filing of the order or judgment. According to the Board's calculation, Taylor could have filed such a motion by January 24, 2009. In her answer to the Board's charges, Taylor denied that she was aware that such an extension could be obtained. At the hearing, Taylor testified she "could have still filed a Notice of Appeal on time" because she received the order on November 25, within fifteen days of the filing of the order. Taylor stated she did not file the notice of appeal on the 25th because she believed she had until December 10 to do so. Thus, according to Taylor, "the delay for getting a Notice of Appeal filed was irrespective of whether or not I got the order on time, but because of my mistake."

Taylor did not immediately inform Norin of the dismissal. On February 10, 2009, Norin sent an e-mail to Taylor requesting a copy of the appellate brief. On March 19, Norin sent another e-mail expressing her dissatisfaction with Taylor's efforts to communicate the status of the matter. Taylor responded to the March 19 e-mail on the same day. Taylor's reply, however, did not tell Norin of the dismissal or of Taylor's error. Instead, Taylor said she would send to Norin the appellate brief,

as requested.  Norin responded the next day and stated she received the appellate brief, but wished to know when the brief was filed.

Taylor testified that she first informed Norin of the dismissal in a letter dated March 23.  The letter was offered into evidence at the hearing.  The March 23 letter told Norin the appeal had been dismissed and that Taylor incorrectly calculated the time for filing the appeal.  Taylor acknowledged the "error," though she stated that "by the time that we received a copy of the Order we were already outside of the time frame for the filing of the appeal."

Norin sent Taylor another e-mail on March 26, which suggested Norin had not received Taylor's March 23 letter.  Norin's e-mail requested the date Taylor filed the brief and information regarding whether the other side had submitted its response to Taylor's brief.  Norin again e-mailed Taylor on June 9, stating, "We have been trying to patiently wait for news regarding our appeal on behalf of our nephew . . . .  The appeal was filed around Thanksgiving.  Has a decision been made?  Has any information come to you?"  On June 11, Joan Ryan, a family member of Norin, sent Taylor another e-mail.  The e-mail expressed Ryan's disappointment in Taylor's "lack of professionalism and communication."  Ryan further noted her family's frustration over Taylor's consistent failure to respond to their phone calls and e-mails.  Ryan requested Taylor provide information relating to the status of the appeal.  Taylor did not respond to the March 26, June 9, or June 11 e-mails.

Taylor testified she did not at first inform Norin of the dismissal because she "wasn't quite sure how to handle" the situation.  Taylor acknowledged her failure to inform Norin of the dismissal "compounded the problem."  When asked whether her failure to disclose was intentional, Taylor responded:

The Motion to Dismiss came after I had already initially worked on the brief and stuff, so initially I . . . wasn't completely forthright . . . about the dismissal, and I believe there was probably a two-month period of time after I knew about it where we kind of led her to believe that it hadn't—I hadn't been forthright about the dismissal, and . . . I kind of led her to believe that it was still pending.

In hindsight, Taylor realizes she should have immediately informed Norin of her error and that it resulted in dismissal of the appeal. Taylor reports she has since implemented measures to ensure her clients are better informed and deadlines are met.

2. *Coleman matter.* In June 2008, Taylor began representation of Coleman in a matter involving a modification of a dissolution decree. The district court denied Coleman's request to modify the decree on September 29, 2009. Because the matter involved child custody issues, the expedited deadlines of rule 6.902(1)(a) applied.

Although Taylor filed a timely notice of appeal, the combined certificate did not state whether the expedited deadline applied, as required by rule 6.804(4) of the rules of appellate procedure. Taylor subsequently filed two applications to extend the filing date of the proof brief and designation of appendix. Neither application stated whether the expedited deadlines applied in violation of rule 6.1003(2).

The appellee in the matter filed a motion to dismiss, which noted the appeal involved child custody issues. The motion to dismiss was not resisted. The court order granting the motion to dismiss noted that it was not resisted and further stated that "[t]he motion to dismiss indicates that this appeal involves child custody issues, though this was not noted by the appellant in the combined certificate or in his two extension requests, as is required by the rules."

Taylor stated she did not indicate in her court filings that the expedited deadlines controlled the Coleman appeal because she believed

they were inapplicable. Taylor explained that she thought the expedited deadlines did not apply because the Coleman appeal involved child visitation issues, not matters involving child custody. Thus, based on her erroneous interpretation of the rules of appellate procedure, Taylor requested extensions to extend the filing dates. Taylor further testified she had been experiencing problems in her personal life, which ultimately culminated in a divorce.

Within ten days of the dismissal, Taylor sent a letter to Coleman advising of the dismissal. The letter stated that the dismissal was due to Taylor's "fail[ure] to file the original proof brief as required as the docketing date missed my calendar."

## II. Standard of Review.

We review the findings of the commission de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 677 (Iowa 2010). The Board must prove misconduct by a "convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). This burden is less demanding than proof beyond a reasonable doubt, but requires a greater showing than the preponderance of the evidence standard. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004). Once misconduct is proven, we may impose a "lesser or greater sanction than the discipline recommended by the grievance commission." *Earley*, 774 N.W.2d at 304 (citations and internal quotation marks omitted).

## III. Ethical Violations.

**A. Neglect.** Iowa Rule of Professional Conduct 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Despite the linguistic differences of its predecessor, DR 6–101(A)(3), we have cited

neglect cases under DR 6–101(A)(3) as precedent in interpreting rule 32:1.3. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 915 (Iowa 2011). In this case, neither party has argued that rule 32:1.3 should be interpreted or applied differently than DR 6–101(A)(3).

Generally, a violation of rule 32:1.3 cannot be found if "the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 812 (Iowa 2007). An attorney does not typically commit neglect by missing a single deadline. *Van Ginkel*, 809 N.W.2d at 102. Instead, neglect involves a consistent failure to perform obligations the lawyer has assumed or a "conscious disregard for the responsibilities a lawyer owes to a client," and may arise when an attorney repeatedly fails to meet deadlines. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (citation and internal quotation marks omitted); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002). Further, ordinary negligence does not constitute neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 817 (Iowa 2007); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551–52 (Iowa 2004).

We conclude the Board failed to establish by a convincing preponderance of the evidence that Taylor violated rule 32:1.3 in both the Norin and Coleman matters. This is not a case in which the attorney's repeated failure to comply with appellate deadlines resulted in administrative dismissal. *See Dolezal*, 796 N.W.2d at 915; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa

2002). Nor is this a case in which the attorney used the clerk's office as a private tickler system. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 699 (Iowa 2008). While Taylor's actions in each matter resulted in the dismissal of each appeal, the record indicates Taylor's actions were the result of negligence rather than neglect. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wintroub*, 745 N.W.2d 469, 475 (Iowa 2008) (holding attorney's failure to timely designate expert, resulting in dismissal of action, did not constitute neglect).

**B. Communication.** Rule 32:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). The comments to rule 32:1.4 state that paragraph (a)(3) requires a lawyer to keep the client reasonably informed about "significant developments affecting . . . the substance of the representation." *Id.* cmt. 3. The Board alleges Taylor violated this rule by failing to inform Norin of the dismissal. We agree. The Norin appeal was dismissed on January 29, 2009. Taylor, however, failed to notify Norin of the dismissal for nearly two months. We are therefore satisfied the Board established Taylor failed to keep her client reasonably informed about the status of the Norin matter.

The Board has also proven Taylor violated rule 32:1.4(a)(4). Rule 32:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4). Following dismissal of the Norin appeal, Norin wrote Taylor several e-mails inquiring generally into the status of the matter. Norin also requested a copy of the appellate brief on multiple occasions. Taylor responded to these inquiries by sending the March 23 letter informing her clients of the dismissal. Yet three additional letters were sent to Taylor following March 23. The letters again requested information regarding the status

of the matter, the date on which Taylor filed the appeal, and a copy of the appellate brief. Taylor did not respond to any of these requests. Therefore, the Board has proven by a convincing preponderance of the evidence Taylor failed to promptly comply with reasonable requests for information.

**C. Misrepresentation.** Iowa Rule of Professional Conduct 32:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). Misrepresentation generally requires proof of intent to deceive. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 294 (Iowa 2011); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith*, 569 N.W.2d 499, 501 (Iowa 1997) (interpreting DR 1–102(A)(4) and stating "[t]he key question is whether the effect of the lawyer's conduct is to mislead rather than to inform." (citation and internal quotation marks omitted)). The Board must prove the attorney acted with some level of scienter greater than negligence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011).

We conclude Taylor violated rule 32:8.4(c) in the Norin matter but not the Coleman matter. Norin sent Taylor an e-mail on February 10 and March 19 requesting information relating to the appeal and expressing dissatisfaction with Taylor's efforts to keep her informed about the status of the matter. Taylor's first response on March 19 did not inform Norin of the dismissal. Instead, Taylor explained she would send a copy of the appellate brief as requested even though she knew the appeal had been dismissed. Taylor testified that she had not been "forthright about the dismissal," and that there was a period of time in which she "kind of led [Norin] to believe that [the appeal] was still pending."

Taylor then sent a letter dated March 23, 2009, clearly explaining the reason for the dismissal. We credit Taylor's testimony that the letter was sent. Nonetheless, the communication of March 19 amounts to a misrepresentation, and Taylor does not argue to the contrary.

Under these circumstances, we are satisfied Taylor's communication and conduct following the dismissal of the Norin appeal constitutes conduct involving misrepresentation in violation of rule 32:8.4(c). *See Thomas*, 794 N.W.2d at 294 (concluding attorney deceived client in a letter stating he would "get to the bottom of the matter" when the attorney knew the case had been dismissed).

In the Coleman matter, however, on this record we are unable to determine whether Taylor acted with a level of scienter greater than negligence. The Board alleges Taylor's letter to Coleman stating the appeal had been dismissed due to her failure to timely file a proof brief amounts to a misrepresentation because the true reason for the dismissal was her failure to include a notice of the expedited deadlines in the court filings. Taylor reasonably testified that she believed the appeal had been dismissed due to her dilatory conduct and not her failure to include the notice in the appeal documents. Further, Taylor took responsibility for the dismissal in the letter to Coleman, stating the court granted the dismissal due to her "failure" to file the necessary brief. The letter also indicates Taylor attached the order granting dismissal. On these facts, the Board has not established by a convincing preponderance of the evidence Taylor had a level of scienter greater than negligence in her correspondence with Coleman. We therefore hold the Board failed to prove Taylor violated rule 32:8.4(c) in the Coleman matter.

**D. Conduct Prejudicial to the Administration of Justice.** Rule 32:8.4(d) prohibits a lawyer from engaging in "conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). Rule 32:8.4(d) is nearly identical to its predecessor, DR 1–102(A)(5). *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(5); *Van Ginkel*, 809 N.W.2d at 102. Conduct is prejudicial to the administration of justice when it impedes "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely by violating well-understood norms and conventions of the practice of law." *Van Ginkel*, 809 N.W.2d at 103 (citation and internal quotation marks omitted). Examples of conduct prejudicial to the administration of justice include "paying an adverse expert witness for information regarding an opponent's case preparation, demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010). The Board alleges Taylor violated this rule in both the Norin and Coleman matters by filing an appeal that was ultimately dismissed.

This court has held that a neglectful failure to prosecute an appeal, which results in an administrative dismissal, constitutes conduct prejudicial to the administration of justice. *See, e.g., Dolezal*, 796 N.W.2d at 914; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 101 (Iowa 2010); *Daggett*, 653 N.W.2d at 380. We have also held an attorney can be in violation of rule 32:8.4(d) when an appeal is administratively dismissed even though the attorney did not commit neglect in the handling of the appeal. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230–31 (Iowa 2008). Yet, in

each of these cases, the administrative dismissal came after the attorneys abandoned prosecution of the appeal and failed to dismiss the appeal before administrative dismissal. Also, in those cases the clerk filed an order accomplishing the dismissal or filed a default notice to dismiss. The case before us, however, is distinguishable.

In this case, Taylor did not allow the appeals to be administratively dismissed following the clerk's default notice. *See Knopf*, 793 N.W.2d at 530 (stating ignoring deadlines, which results in default notices from clerk, constitutes conduct prejudicial to the administration of justice). The record does not indicate whether the clerk filed any default notice related to either appeal. *See Wengert*, 790 N.W.2d at 101 (holding attorney's failure to timely file proof brief, followed by default notice from clerk, constituted neglect and conduct prejudicial to the administration of justice when attorney ignored default notice); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 669 (Iowa 2007) (holding disregard of notice of default constitutes neglect and conduct prejudicial to the administration of justice). Instead, the record shows the dismissals resulted from motions to dismiss filed by the opponents of Norin and Coleman in light of Taylor's negligent failure to appreciate the applicability of the expedited deadlines. Under these circumstances, the Board has failed to establish by a convincing preponderance of the evidence Taylor's conduct was prejudicial to the administration of justice under rule 32:8.4(d).

**IV. Sanction.**

The appropriate sanction is determined by the particular circumstances of each case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 497 (Iowa 2010). We do, however, seek a degree of consistency in our disciplinary cases with respect to sanctions.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clauss*, 711 N.W.2d 1, 4 (Iowa 2006). While we give respectful consideration to recommendations of the commission, "the matter of sanction is solely within the authority of this court." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison*, 727 N.W.2d 115, 119 (Iowa 2007) (citation and internal quotation marks omitted). In determining the appropriate sanction, the court weighs the aggravating and mitigating circumstances and considers " 'the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the [attorney's] fitness to continue in the practice of law.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 206 (Iowa 2012) (quoting *Comm. on Prof'l Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985)).

We first consider the mitigating factors. We note Taylor has taken responsibility for her actions. We have held that such forthrightness is a mitigating factor to be considered in calibrating the appropriate sanction. *See Thomas*, 794 N.W.2d at 295 (noting attorney's admission of responsibility is a mitigating factor).

Taylor has also limited her appellate practice following the Norin and Coleman matters. For what remains of her appellate practice, Taylor has implemented new policies and procedures in her office to ensure deadlines are met. *See id.* (noting implementation of new office procedures to ensure missed deadlines do not recur is a mitigating factor).

We also note that Taylor maintains a law practice that allows persons with modest means to obtain representation in family law matters. She charges a modest hourly rate which provides her clients with access to the courts for an affordable fee. Providing legal representation to an underserved part of the community is a significant

mitigating factor. *See Comm. on Prof'l Ethics & Conduct v. Borchart*, 392 N.W.2d 491, 492 (Iowa 1986) (agreeing with commission's observation that attorney's service on behalf of the disadvantaged was a mitigating factor).

Finally, Taylor cites stress related to personal issues involving the dissolution of her marriage and subsequent child custody dispute. Although such personal issues do not excuse ethical violations, they may be a mitigating factor in determining sanctions. *See Van Ginkel*, 809 N.W.2d at 110.

Turning to the aggravating factors, we note Taylor received a public reprimand in 2005 for neglect of a client matter and failure to provide upon request an accounting of a client's retainer. The details of this matter are not provided in the record of this proceeding. Taylor also received a temporary suspension in 2010, but the temporary suspension was lifted a day later and appears to have been the result of a mail or administrative error, was cured within hours of the suspension, and is of little consequence for purposes of this proceeding.

The most troublesome feature in this case is the misrepresentation to Norin regarding the dismissal. As we stated in *Hohenadel*, "[t]he court system and the public we serve are damaged when our officers play fast and loose with the truth." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 656 (Iowa 2001) (citation and internal quotation marks omitted). Yet the conduct in this case is less egregious than that found in other cases imposing a greater sanction. *See Daggett*, 653 N.W.2d at 381–82 (imposing sixty-day suspension for conduct involving neglect, misrepresentation, and failure to respond to the Board's inquiries when client was harmed); *Hohenadel*, 634 N.W.2d at 657 (imposing four-month suspension for attorney with history of

unethical conduct who engaged in conduct involving misrepresentation and neglect resulting in harm to the attorney's clients); *Comm. on Prof'l Ethics & Conduct v. Horn*, 379 N.W.2d 6, 8–10 (Iowa 1985) (holding failure to cooperate with committee, neglect in one matter, and misrepresentations to decedent's daughter warranted three-month suspension). Taylor's conduct is closer, though not identical, to misrepresentation cases in which we imposed a public reprimand. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 789 N.W.2d 756, 760 (Iowa 2010) (holding misrepresentation involving plagiarism warranted public reprimand); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 788–89 (Iowa 2008) (holding misrepresentation in form of forging judge's signature warranted public reprimand in absence of prior disciplinary history).

We agree with the commission's conclusion that, under all the facts and circumstances of this case, a public reprimand is the appropriate sanction. We further agree with the commission's observation that future violations may well produce a different result.

## V. Conclusion.

For the reasons expressed above, Karen Taylor is publically reprimanded for the ethical violations cited in this opinion.

**ATTORNEY REPRIMANDED.**