# In the Iowa Supreme Court

No. 24–1124

Submitted October 10, 2024—Filed December 13, 2024

**Iowa Supreme Court Attorney Disciplinary Board,**

Complainant,

vs.

**Patricia Jean Lipski,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends suspension of the respondent's license to practice law based on violations of our attorney ethics rules. **License Suspended.**

McDermott, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, and Oxley, JJ., joined. Oxley, J., filed a concurring opinion, in which Christensen, C.J., and Waterman, J., joined. McDonald, J., filed an opinion concurring in the judgment, in which May, J., joined.

Tara van Brederode, Allison A. Schmidt, and Alexis W. Grove for complainant.

Alexander E. Wonio and David L. Brown of Hansen, McClintock & Riley, Des Moines, for respondent.

**McDermott, Justice.**

This attorney disciplinary matter presents a failure in our attempts at progressive discipline to prevent a lawyer from continuing to miss filing deadlines in appeals. In the underlying termination-of-parental-rights case giving rise to this disciplinary matter, we dismissed a mother's appeal after her lawyer failed to timely file both a notice of appeal and a petition on appeal. We now suspend the lawyer's license to practice law for thirty days.

### I. Background Facts and Proceedings.

Attorney Patricia Lipski is a solo practitioner in Washington County. She has been licensed to practice law in Iowa since 2001. She focuses her practice principally on juvenile court work, including child-in-need-of-assistance cases, termination-of-parental-rights cases, juvenile guardianships, and juvenile (and sometimes adult) mental health commitments. On rare occasions, she also defends clients in misdemeanor criminal cases. Her cases principally come to her through court appointments. She holds a contract with the state public defender's office to represent clients in juvenile proceedings in at least six counties in southeast Iowa.

This disciplinary matter arises from a termination-of-parental-rights case where Lipski was appointed to represent the child's mother, "Alicia" (a pseudonym). The juvenile court entered an order terminating Alicia's parental rights on January 30, 2023. Alicia, communicating with Lipski the next day using a messaging app, asked Lipski to appeal. A party seeking to appeal a termination of parental rights must first file a notice of appeal signed by the client within fifteen days of the termination order. Iowa R. App. P. 6.101(1)(*a*) (2023). A party must then file a petition explaining the basis for relief within thirty days of the contested ruling. *See id.* r. 6.201(1)(*b*) (requiring the petition to

be filed fifteen days after the notice of appeal, for a total of thirty days after the contested ruling).

Lipski and Alicia exchanged multiple messages to schedule a meeting to sign the notice. Alicia lacked access to transportation, thereby creating a situation where Lipski had to go to her. For reasons generally involving problems with Lipski's schedule (that she had to get home for an appointment, that her week had been "shot to hell," that her "day fell apart"), none of the scheduled meetings materialized. Eventually, on the due date, Lipski drove from Washington to Alicia's residence in Ottumwa to procure the signature, but this meeting similarly never materialized because Alicia apparently did not see or respond to Lipski's messages when Lipski arrived. As a result, Lipski still had not obtained a signed notice by the February 14 deadline. On that date, Lipski filed a noncompliant notice with "/s/" on the signature line instead of Alicia's signature. On February 17, we entered an order noting the absence of the client's signature and requiring an amended notice signed by the client within seven days (i.e., February 24).

Lipski obtained Alicia's signature on the amended notice on February 24. Yet Lipski did not file it with our court until February 26, two days beyond the deadline.

Lipski then filed the petition on appeal on March 6. But our order requiring the signed notice within seven days did not extend the deadline to file the petition on appeal. Our February 17 order made this point explicit: "This order does not stay or affect any other pending deadlines, including the jurisdictional petition on appeal deadline." The deadline for the petition on appeal thus remained March 1. As a result, the March 6 petition on appeal also was filed beyond the deadline. Alicia messaged Lipski several times between March 1 and March 5,

including a message specifically asking about the status of the appeal. Lipski never responded.

On March 7, we entered an order noting the late filing and requiring a statement from Lipski's client explaining why the appeal should not be dismissed. The same day, the State filed a motion to dismiss the appeal citing the untimely filings. Also that same day, Lipski filed a motion for a delayed appeal. In her motion, Lipski explained that she had been focused on several other matters in district court and that the untimely petition on appeal resulted from her own failure to properly calendar the deadline.

Lipski did not communicate with Alicia about the fact her appeal documents had been filed late, the State's motion to dismiss the appeal, or our order requiring an explanation and threatening dismissal. When, on March 20, Alicia messaged Lipski about the status of her appeal, Lipski responded only: "The appeal is still pending. Everything has been submitted for it." Two days later, on March 22, we entered an order denying the motion for delayed appeal and dismissing the appeal for lack of jurisdiction.

Lipski did not contact Alicia to let her know. Over the ensuing weeks, Alicia sent several messages to Lipski. Although Lipski appears to have communicated regularly with Alicia before the appeal, during the appeal Lipski went dark. On April 29, Alicia sent Lipski a message inquiring, "Still nothing about my appeal[?]" Lipski did not respond.

On May 4, Alicia sent Lipski another message: "I'm getting nervous I haven't heard back from u." Lipski finally responded. "Sorry. Been pretty crazy last several weeks. The appeal was denied & dismissed. I'm so sorry." Lipski did not respond to several follow-up inquiries from Alicia about whether Alicia could appeal again. Lipski never disclosed to Alicia the reason for the dismissal.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Lipski with the grievance commission asserting multiple violations of the Iowa Rules of Professional Conduct based on Lipski's actions surrounding Alicia's appeal. The grievance commission held a contested hearing.

Lipski testified, among other things, about the circumstances surrounding her representation of Alicia. The Board admitted exhibits showing the messages exchanged between Alicia and Lipski from before and after the ruling terminating Alicia's parental rights. The Board also admitted exhibits containing information about prior admonishments and discipline that Lipski received. The commission received evidence about two private admonitions—one in 2018 and the other in 2020—for failing to timely file documents in appeals of termination-of-parental-rights cases that, like here, resulted in the dismissal of appeals for several of her clients. The commission also received evidence about a public reprimand imposed on February 10, 2023. The public reprimand similarly resulted from Lipski's failure to timely file documents in appellate cases that had resulted in dismissal in two clients' termination-of-parental-rights cases.

Lipski testified that Alicia's representation presented unique difficulties because of Alicia's general inability to communicate by means other than a messaging app. When asked about her own lack of communication with Alicia about the late filings in the appeal, Lipski said that she was embarrassed by her mistakes and under significant stress from a variety of sources at the time. Lipski conceded that, as of the date of the grievance commission hearing, she still had not disclosed to Alicia the reason the supreme court dismissed the appeal. Lipski also described some other challenges in her practice that have negatively affected both her mental health and her ability to handle her caseload. She described the emotional toll that comes with representing children and parents on such

consequential matters and how a lack of financial resources has prevented her from hiring support staff. Lipski also described pro bono and other volunteer work that she does.

Two district associate judges before whom Lipski frequently appeared were subpoenaed to testify at the grievance commission hearing. Both judges testified that they regularly appoint Lipski to handle juvenile cases in their courts, with one of them noting that he'd just appointed her in a case earlier that week. Both praised the quality of her legal work in juvenile court and "the experience and the competence" that Lipski brings. Several pieces of testimony focused on Lipski's unique ability to communicate with challenging clients and that she "is comfortable using social media and kind of meeting clients where they are in a way that engages them in the process." Both judges shared their appreciation for Lipski's willingness to take on appointments to represent indigent clients. And both judges noted the dearth of lawyers in their area available for appointments in juvenile cases and the critical need that Lipski thus fulfills. "I need Ms. Lipski," said one of the judges. Both judges' experiences with Lipski were limited to district court work; neither judge had personal knowledge of Lipski's work on appellate matters.

The grievance commission, in its findings of fact, conclusions of law, and recommended disposition, found Lipski sincere and her testimony credible. It also noted its appreciation for the informed perspectives of both judges who testified. But the grievance commission ultimately concluded that Lipski's actions in Alicia's case violated each of the ethics rules that the Board charged. These violations, coupled with Lipski's prior discipline for essentially identical misconduct, caused the commission to recommend a fourteen-day suspension of Lipski's license to practice law.

**II. The Alleged Ethical Violations.**

The Board charged Lipski with violating five of our rules of professional conduct. In an attorney disciplinary case, we review de novo the alleged violations and evidence to ensure that the Board has proved each allegation of misconduct by a convincing preponderance of the evidence. Iowa Ct. R. 36.22(4); *see Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281–82 (Iowa 2009) (per curiam). The same underlying conduct may violate multiple rules of professional conduct at once. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 65 (Iowa 2014).

**A. Diligence.** Iowa Rule of Professional Conduct 32:1.3 requires lawyers to "act with reasonable diligence and promptness in representing a client." Failing to comply with appellate deadlines can constitute a violation of this rule, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669 (Iowa 2008), particularly "when an attorney's neglect results in the client's loss of a right to appeal," *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 145 (Iowa 2018).

We recognize that Lipski faced some logistical challenges in getting the signed notice of appeal from Alicia that were not all of Lipski's making, including that Alicia lived about fifty miles away and apparently did not use email, have a printer, or have access to transportation. But Lipski bears responsibility for repeatedly canceling meetings to obtain Alicia's signature, ultimately leaving too little margin for mishaps at the deadline. And Lipski's failure to file the signed notice of appeal within the (effectively extended) deadline in our order, and her failure to file the petition on appeal within the thirty-day deadline, were indisputably within Lipski's control. The circumstances show a lack of diligence and promptness in violation of the rule.

**B. Communication.** Rule 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter." Iowa R. of Prof'l Conduct 32:1.4(a)(3). And rule 32:1.4(a)(4) compels a lawyer to "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4). Lipski never told Alicia that she had made any late filings, that the State had filed a motion to dismiss the appeal, that our court had entered an order requesting a statement explaining the late filings, or that there were potentially dire consequences in play. Lipski also never told Alicia *why* her appeal was dismissed. Lipski admitted at the hearing that as far as she knows, Alicia still doesn't know the reason. This lack of communication about important developments in the case, particularly in the face of Alicia's repeated requests for information, establishes a violation of both rules 32:1.4(a)(3) and (a)(4).

**C. Expediting Litigation.** Rule 32:3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. of Prof'l Conduct 32:3.2. We have said that failing to comply with appellate filing deadlines may violate the rule. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 636–37 (Iowa 2015). The actual length of delay in the litigation was arguably minimal, as Lipski missed each of the deadlines by days. But in this case, the final words of the rule—"consistent with the interests of the client"—bear some importance. Iowa R. of Prof'l Conduct 32:3.2. Our appellate rules in parental-termination cases call for different, tighter deadlines than in most other cases. *Compare* Iowa R. App. P. 6.101(1)(*a*), *and id.* r. 6.201(1)(*b*), *with id.* r. 6.101(1)(*b*), *and id.* r. 6.901(1)(*a*). These expedited deadlines are an acknowledgment of the profound interests and time sensitivity at stake in parental-termination cases. *See In re A.B.*, 957 N.W.2d 280, 291 (Iowa 2021). To Lipski's client, who had just lost the right to parent her child, even the

short delay with the filings prevented review of her appeal on the merits. We thus find a violation of this rule.

**D. Misrepresentation.** Rule 32:8.4(c) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. of Prof'l Conduct 32:8.4(c). To show a violation, "the Board must prove 'the attorney acted with "some level of scienter" rather than mere negligence.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Meyer*, 944 N.W.2d 61, 69 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 403 (Iowa 2016)). We must sort out "whether the effect of the lawyer's conduct is to mislead rather than to inform." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015). It is hard to read the eventual text message to Alicia about what happened ("The appeal was denied & dismissed. I'm so sorry.") as other than an attempt to mislead or misinform about the reason for the appeal's lack of success. We find a violation of this rule.

**E. Misconduct Prejudicial to the Administration of Justice.** Rule 32:8.4(d) prohibits conduct "prejudicial to the administration of justice." Iowa R. of Prof'l Conduct 32:8.4(d). Although there is no "typical" conduct that prejudices the administration of justice, it includes conduct that "violates the 'well-understood norms and conventions of the practice of law' " and thus "hampers 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 128 (Iowa 2022) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013)). "Examples of conduct prejudicial to the administration of justice," we have said, "include 'paying an adverse expert witness for information regarding an opponent's case preparation, demanding a release in a civil action as a condition of dismissing criminal charges, and

knowingly making false or reckless charges against a judicial officer.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 267 (Iowa 2012) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)); *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Daniels*, 984 N.W.2d 757, 765 (Iowa 2023) (finding a rule 32:8.4(d) violation for, as the Board characterized it, a lawyer's "persistent and inexorable pursuit of the same claims over and over again against the same litigant, spanning more than a decade" that placed "a drain on judicial resources and a blight on the justice system").

Although we have held that the failure to comply with appellate deadlines that results in a dismissal can constitute a violation of the rule, we have generally done so when a lawyer has abandoned prosecution of the client's appeal such that the clerk, in light of the lawyers' complete inaction, had to administratively dismiss the appeal. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 914–915 (Iowa 2011); *Iowa Supreme Sup. Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230–31 (Iowa 2008). That didn't happen in this case.

Though tardy, Lipski did in fact prepare and file both the client-signed appeal notice and the petition on appeal. She filed a motion pursuing a late-filed appeal the same day that we entered our order requesting her response. Lipski never failed to appear for scheduled hearings, and any wasted investment of time and energy by the courts was minimal. *Cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 414 (Iowa 2023) (finding a violation of rule 32:8.4(d) where the lawyer's repeated failure to meet deadlines and appear for scheduled hearings " 'undoubtedly delayed court proceedings' and 'caused court personnel to invest time and energy' that they would not have otherwise" (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 226 (Iowa 2018))). The dismissal of the appeal was an adjudication by our court, not a default entered

by the clerk after some long period of dormancy. Although Lipski missed deadlines, she never abandoned her client's cause. *Cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. O'Brien*, 971 N.W.2d 584, 590–91 (Iowa 2022) (finding a violation of rule 32:8.4(d) when a lawyer "effectively abandoned [the client] shortly after accepting the case" and "requir[ing] the opposing party to file a motion to compel and for the court to hold both a hearing on the motion and a related hearing on sanctions").

A different case, *Iowa Supreme Court Attorney Disciplinary Board v. Taylor*, presents a more analogous set of facts. 814 N.W.2d 259. In *Taylor*, the Board charged multiple violations of our ethics rules when a lawyer failed to timely file notices of appeal in a child-in-need-of-assistance case and a dissolution modification case. *Id.* at 263–64. Although both appeals were dismissed after opposing parties filed motions to dismiss, neither case was administratively dismissed based on the lawyer's abandonment of the case. *Id.* at 267–68. In both cases, the lawyer was active in the appeal but through negligence "fail[ed] to appreciate the applicability of the expedited deadlines." *Id.* at 268. We concluded that the lawyer's conduct didn't constitute a violation of rule 32:8.4(d). *Id.*

This is thus not the usual type of delay or dismissal for which we have found "prejudice to the administration of justice" under rule 32:8.4(d). *See Dolezal*, 796 N.W.2d at 914–15; *Wright*, 758 N.W.2d at 230–31. We do not find a violation of the rule here.

**III. Sanction.**

The purposes of lawyer discipline include protection of the public, the need for deterring other lawyers from similar misconduct, upholding the integrity of the legal system, and assuring the fair administration of justice. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 516 (Iowa 2020); *see also*

Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* § 1.1, at 1 (2015). We have no standard sanction for particular types of misconduct. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). To determine the appropriate sanction, we consider the nature of the ethical duties that the lawyer violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating circumstances. *Beauvais*, 948 N.W.2d at 516.

We respectfully consider the grievance commission's findings and recommendations but may impose a greater or lesser sanction than what the grievance commission recommends. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016). The grievance commission recommends a fourteen-day suspension. The Board asks us to impose a thirty-day suspension. Lipski argues that her conduct did not violate any rules and asks for no sanction.

The misconduct in this case centers on neglect of Alicia's appeal. Attorney neglect cases typically result in sanctions anywhere from a public reprimand to a six-month suspension. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 675 (Iowa 2013). We tend to impose more severe sanctions when neglect is accompanied by other violations or aggravating factors. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010).

*Iowa Supreme Court Attorney Disciplinary Board v. Sobel* presents a number of similarities to this case. 997 N.W.2d 421 (Iowa 2023). In *Sobel*, a lawyer neglected client matters, failed to communicate with clients, and failed to comply with court deadlines, resulting in dismissal of a client's case. *Id.* at 426–27. We found the lawyer's legal work on behalf of underserved populations to be a mitigating factor but found the fact that he had previously been admonished or reprimanded for violations of the same rules and "was on notice

that similar conduct may warrant a sanction" to be an aggravating factor. *Id.* at 433–34. We imposed a thirty-day suspension. *Id.* at 434.

In *Iowa Supreme Court Attorney Disciplinary Board v. Dolezal*, a lawyer neglected three clients' matters (causing a dismissal in a case), failed to communicate with a client, and made misrepresentations to a client, violating several of the same ethical rules as Lipski. 796 N.W.2d at 912–13. Unlike Lipski, the lawyer had no recent disciplinary history involving similar misconduct, but the lawyer had also had additional violations involving trust account requirements. *Id.* at 920–21. We imposed a thirty-day suspension. *Id.* at 922–23.

In *Iowa Supreme Court Attorney Disciplinary Board v. Hoglan*, a lawyer failed to pursue four appeals on behalf of his clients, resulting in dismissals in each case. 781 N.W.2d 279, 282–83 (Iowa 2010) (per curiam). Unlike Lipski, we found insufficient evidence to conclude that the lawyer had misrepresented matters to his clients. *Id.* at 285. But like Lipski, the lawyer had received a public reprimand shortly before the misconduct in question and yet still failed to comply with appellate deadlines. *Id.* at 286–87. We imposed a thirty-day suspension. *Id.* at 287.

We turn to the mitigating and aggravating factors. Lipski's considerable service to an underserved population is a mitigating factor. *Sobel*, 997 N.W.2d at 433–34. The juvenile court judges testified at the hearing that Lipski's willingness to take appointments in juvenile cases has been critical to meet the demand in this area and that any suspension of her license risks adversely affecting the operation of the juvenile court system. Lipski's other community service and pro bono work are also mitigating factors. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hier*, 937 N.W.2d 309, 318 (Iowa 2020) (discussing community service); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194–95

(Iowa 2015) (discussing pro bono work). The grievance commission noted Lipski's credibility and sincerity in her testimony, which comes through in our reading of the transcript, as also a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 207 (Iowa 2012) (finding the fact that the lawyer "expressed sincere remorse" to be a mitigating factor).

The grievance commission declined to consider the mental health challenges that Lipski raised in her testimony to be a mitigating factor, concluding that Lipski failed to explain how her mental health conditions brought about the particular misconduct in this case or what efforts she has taken to try to ensure that her condition doesn't result in similar problems moving forward. We come to the same conclusion on this point. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 647 (Iowa 2023) (declining to find mitigation when there was no causal relationship shown between the lawyer's health and the misconduct at issue).

Client harm is an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 122 (Iowa 2015). Alicia was clearly harmed by losing her opportunity to appeal the termination of her parental rights. Lipski's experience as an attorney (now more than two decades) serves as an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 658 (Iowa 2017). Multiple rule violations, as we have here, are an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019).

Most aggravating is Lipski's history of misconduct. Lipski's private admonitions in 2018 and 2020, followed by a public reprimand in 2023, all for the same type of misconduct as in this case, give us no reason to believe that our prior reformatory efforts have had the intended effect. As the grievance commission noted, Lipski's public reprimand was issued about a week before

she failed to timely file a valid notice of appeal in Alicia's case. And we agree with the grievance commission's observation that Lipski in her testimony struggled to point to specific remedial measures, beyond better attention to calendaring, that she has implemented to prevent the same problems from happening again.

Although we are mindful of the district associate judges' testimony about the serious need for Lipski's services in juvenile court cases in the counties where she practices, other considerations—particularly the need to deter future violations and protection of the public—outweigh that concern in this case. In *Iowa Supreme Court Attorney Disciplinary Board v. Capotosto*, we similarly noted a judge's and county attorney's letters describing the lawyer's "importance as one of few attorneys willing to accept court-appointed assignments in a five-county area" and warning that a suspension could "severely and adversely disturb[]" judicial operations in those counties. 927 N.W.2d 585, 590–91 (Iowa 2019). But we nonetheless imposed a sixty-day suspension, finding the lawyer's persistent neglect of probate matters and two prior public reprimands for similar misconduct necessitated discipline beyond yet another public reprimand. *Id.* at 591.

Lipski's misconduct centers on a failure to timely file documents in appellate cases. The Board's briefing acknowledges that it "does not contest that Lipski represents her clients well at the trial-court level," even describing her representation in trial court as "exemplary." But as the Board also notes, Lipski has a continuing duty to diligently represent clients in their appeals, and it is in this area that she has neglected her duties. Another public reprimand, in our view, is insufficient to address the problem in this case.

We thus suspend Lipski's license to practice law for thirty days, effective ten days from the date of this opinion. This suspension applies to all facets of

the practice of law under Iowa Court Rule 34.23(3). She must comply with the notification requirements to her clients in Iowa Court Rule 34.24. We tax the costs of this action to Lipski under Iowa Court Rule 36.24(1).

**License Suspended.**

Christensen, C.J., and Waterman, Mansfield, and Oxley, JJ., join this opinion. Oxley, J., files a concurring opinion, in which Christensen, C.J., and Waterman, J., join. McDonald, J., files an opinion concurring in the judgment, in which May, J., joins.

**McDonald, Justice (concurring in the judgment).**

On August 20, 2024, the chief justice issued a Notice of Nonoral Submission in this attorney disciplinary matter. The notice stated that "[n]o notice of appeal has been filed, and the time for filing a notice of appeal has expired" and cited Iowa Court rule 36.21(1). The notice further stated that because this attorney disciplinary matter is proceeding pursuant to rule 36.21, the parties "may file a statement in support of, or in resistance to, the grievance commission's recommended sanction." Because this attorney disciplinary case is proceeding pursuant to rule 36.21, it involves only the question of sanctions, and the chief justice's notice correctly directed the parties to file statements regarding only the sanctions to be applied given the uncontested violations.

Despite our rules, the chief justice's notice, and the lack of adversarial briefing, the court nonetheless proceeds to analyze the sufficiency of the evidence supporting each of the uncontested violations as if this matter were proceeding as an appeal pursuant to rule 36.22. The court then finds that there was insufficient evidence to find a violation of rule 32:8.4(d) even though Lipski did not contest the violation and even though the Attorney Disciplinary Board was not given the opportunity to brief the issue.

I disagree with this approach to resolving attorney disciplinary matters. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Yang*, 6 N.W.3d 312, 325–26 (Iowa 2024) (McDonald, J., concurring in part and dissenting in part); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 646–48 (Iowa 2020) (McDonald, J., concurring in part and dissenting in part). This court is the body that drafts the rules. If the court does not like the rules as they presently exist, then the court should amend the rules rather than ignore them to the prejudice

of the Attorney Disciplinary Board, which did not have an opportunity to advocate for the sufficiency of the evidence supporting each of the alleged violations.

"Because this matter only involves the question of sanctions under Iowa Court Rule 36.21, the sufficiency of the evidence supporting each of the ethical violations is not properly before the court." *Yang*, 6 N.W.3d at 325 (McDonald, J., concurring in part and dissenting in part). I thus join only part III of the court's opinion regarding the sanctions to be applied in this case. *See id.* at 325–26; *Tindal*, 949 N.W.2d at 646–48 (McDonald, J., concurring in part and dissenting in part).

May, J., joins this opinion concurring in the judgment.

**Oxley, Justice (concurring).**

I concur fully in the court's decision in this case. I write separately to point out that one of the reasons Lipski missed the appellate deadlines is the lack of administrative assistance, and one of the reasons she lacked administrative assistance was the lack of finances, and one of the reasons she lacked finances was the fact that Lipski works almost exclusively as a contract attorney with the public defender's office taking court-appointed juvenile cases. Lipski is one of only a half dozen contract attorneys in five counties in District 8A and the only one who contracts in all five counties. Two district associate judges testified at the commission hearing about the difficulty in getting enough attorneys to represent the parties in juvenile cases needing court appointments and that they regularly rely on Lipski. As one put it, "[S]he's important. And she does good work." That judge attributed the challenges in getting attorneys to accept court appointments to the "reimbursement rate by the State," especially in the border counties where attorneys can practice in a neighboring state that pays their contract attorneys more money.

None of this excuses Lipski's conduct in this case or the ramifications to her client, who was denied a merits review of the order terminating her parental rights. But this case does highlight the indigent defense crisis caused by the low pay for contract attorneys in Iowa who can't even afford the help of an administrative assistant as they work to provide this invaluable service in our rural counties.

Christensen, C.J., and Waterman, J., join this concurrence.